IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
Western Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 3:16CR132 |
| v. ) | |
| ) | Judge Walter H. Rice |
| RONALD SCOTT GIBSON, ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, through its attorneys, Benjamin C. Glassman, United States Attorney, and Dominick S. Gerace, Assistant United States Attorney, hereby submits its sentencing memorandum with respect to Defendant Ronald Scott Gibson. Based on the factors of 18 U.S.C. § 3553(a), the United States submits that a sentence of imprisonment of 235 months is sufficient, but not greater than necessary, to achieve the objectives of sentencing.

## BACKGROUND

Between February and June 2016, Defendant Ronald Scott Gibson used the Gigatribe peer-to peer (P2P) network to communicate and trade child pornography with other Gigatribe users. Presentence Report (PSR) ¶ 18. One of those users was an undercover law enforcement officer working for the Swiss Federal Criminal Police. *Id*. ¶ 14. On March 1, 2016, Gibson provided the undercover officer with the password to Gibson's shared folder on the network so that the officer could gain access to child pornography that Gibson had stored in the folder. *Id.* Using Gibson's password, the officer accessed two video files depicting prepubescent children engaging in sexually explicit conduct. *Id.* One video showed a prepubescent white female child with her vagina exposed to a camera with another individual rubbing and partially penetrating

the child's vagina with an object. *Id.* The other video showed prepubescent and adolescent male children exposing their genitalia and anuses, performing oral sex on other males, masturbating, and inserting objects into their anuses. *Id.*

After the undercover officer obtained the IP address used by Gibson to share files on Gigatribe, law enforcement executed a search warrant at Gibson's residence on June 3, 2016. *Id.* ¶ 16. Among other items, agents seized an Acer laptop containing at least 470 images of child pornography, including images of adults molesting and sexually abusing prepubescent children. *Id.* ¶ 18. Agents also recovered from the Acer laptop chat sessions from Gigatribe between Gibson and various other users that occurred between February 20, 2016, and June 1, 2016, including messages exchanged between the undercover officer and Gibson in March 2016. *Id.* A review of the messages showed that Gibson provided the password to his shared file to at least 7 other users, and that Gibson engaged in the discussion of trading child pornography files and his sexual interest in children. *Id.* In one chat session with another Gigatribe user, Gibson stated that he likes toddlers the most and that he had engaged in sexual activity with a baby. *Id.* Three thumb drives were also seized from Gibson's residence that contained images of child pornography. *Id.* During the course of the investigation, agents discovered that Gibson possessed 4,070 images and 13 videos of child pornography, including material depicting prepubescent children engaged in sexual intercourse with adults. *Id.* ¶ 27. The National Center for Missing and Exploited Children identified at least 159 known series in Gibson's collection. *Id.* ¶ 28.

Law enforcement interviewed Gibson on the day that the search warrant was executed at his residence. After initially denying possessing file sharing programs on his computer, Gibson admitted to using Gigatribe to view child pornography of children approximately 6-10 years old

2

engaged in sex acts. *Id.* ¶ 21. Gibson admitted to getting and sending invitations to be friends with other users on Gigatribe and that he viewed and downloaded child pornography on Gigatribe. *Id.*

At the time of the conduct described above, Gibson had previously been convicted in 1998 of Gross Sexual Imposition in Preble County, Ohio. *Id.* ¶ 23. When questioned about this previous conviction during his interview with agents on June 3, 2016, Gibson claimed that he had accepted a plea offer regarding allegations that he molested his own child to avoid putting his family through a trial. *Id.* Gibson denied sexual contact with children and agreed to take a polygraph regarding the truthfulness of his denial. *Id.* On June 3, 2016, a polygraph examination was conducted with Gibson. *Id.* ¶ 25. After being informed that he failed the polygraph, Gibson ultimately admitted that he had engaged in sexual activity with his then-prepubescent children when they were ages 1-6 years old—including the one child involved in the Preble County case—and had instructed the children not to tell their mother. *Id.* ¶ 25.

## ARGUMENT

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are "effectively advisory." *Id.* at 245. Nonetheless, the advisory nature of the sentencing guidelines does not mean that they are irrelevant to the imposition of a sentence. As the Sixth Circuit has consistently held, district courts must consider the advisory guidelines range in imposing a sentence. *E.g., United States v. Recla*, 560 F.3d 539, 548 (6th Cir. 2009) ("A district court must consider the advisory Guidelines range . . . ."); *United States v. Blackie*, 548 F.3d 395, 400 (6th Cir. 2008) ("The district court must also acknowledge 'the defendant's applicable Guideline range.'"). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338,

3

350 (2007). Thus, a sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted).

As noted in the PSR, the appropriate sentencing guideline in this case is U.S.S.G. § 2G2.2. Pursuant to that guideline provision, the PSR correctly calculates an offense level of 37, a Criminal History Category of I, and an advisory sentencing guidelines range of 210 to 262 months imprisonment. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties have agreed to a range of imprisonment between 180 and 235 months.

The United States respectfully submits that the factors of sentencing under 18 U.S.C. § 3553(a) warrant a sentence of imprisonment of 235 months, which falls within the correctly calculated sentencing guidelines range.

  A. <u>Nature and Circumstances of the Offense</u>

Gibson committed a very serious offense that warrants the sentence recommended by the United States herein. Gibson distributed child pornography to other individuals using a peer-to-peer network and possessed thousands of images and/or videos of child pornography on his own electronic devices. Many of the images and videos that Gibson distributed and possessed depict adults committing sex acts on prepubescent children. These depictions were created for a criminal market that is engaged in the business of destroying the lives of children. And Gibson was an active and willing participant in that market. The children depicted in those images and videos will continue to be victimized long after this case is concluded. They will be victims for the rest of their lives not only due to memories of abuse, but also because their images now exist in a medium where they cannot be destroyed or erased.

Gibson's participation in the victimization of children in this case is even more serious and disturbing based on his criminal history. As discussed in further detail below, Gibson has a history of abusing his own children, and pled guilty to sexually abusing one of those children approximately 20 years ago. That previous conviction increases the mandatory minimum in this case from 5 years to 15 years, signaling Congress's judgment that Gibson's crime is even more serious as a result of his past history. Adding to the troubling nature of this case are discussions that Gibson engaged in with other users of Gigatribe. In those discussions, Gibson stated that he preferred toddlers, that he likes babies, and that he had sexually abused a baby. Further, agents uncovered evidence showing that Gibson not only shared his child pornography files with the undercover officer, but also with at least 7 other users of Gigatribe. Accordingly, Gibson's conduct in this case was not limited or irregular. He purposefully shared images of child pornography with numerous other individuals.

Gibson's crime involved at least 159 known series of child pornography. The victims represented in these series were abused in both the United States and abroad, in Switzerland, Canada, France, Germany, Australia, Mexico and numerous other countries outlined in the PSR. PSR ¶ 28. The mother of one of those victims in this case has submitted a victim impact statement detailing the impact of child pornography crimes on these children and their families:

> To hear that pictures and videos had been take of my child engaging in sexual behavior, and they were being sold, traded or what not across the country was almost more than I could stomach. The pictures and videos that I had seen of my child is NOTHING any child or person should have to endure in their lifetime. No person or parent should ever have to see this done to their child or see their child doing these horrific things . . . things I will never be able to erase that from my head . . . . . And to think I wasn't there to stop it or help keep him from these animals. I feel responsible for not being able to protect my child from the monster who did these things to him, and who recorded and distributed the images of my son's abuse.

> Up until we were notified of [son's] abuse, and the distribution of his abuse images, he pretty much lived a normal happy life prior to learning that his images are on the internet. He used to be so lively, loving, happy and caring. He used to LOVE to play outside with friends and even be around his family. He was such a Character and a goof ball and always smiling. That has all changed. He has become quite reclusive, staying in his room, playing video games. He no longer likes to participate in very much unless it is with people he knows and really trusts. He has a chip on his shoulder, an attitude that is more hostile than friendly. He is not as open and chatty as he used to be. I just don't see the same child any more.

By participating in the child pornography market, Gibson's conduct has directly contributed to the pain and harm caused to this mother and her child, as well as to the hundreds of other children whose images Gibson traded and possessed. Accordingly, a sentence of 235 months is warranted based on the nature and circumstance of this offense.

B. History and Characteristics of Defendant

Gibson's history and characteristics also merit a 235 month sentence. Simply stated, Gibson is a danger to the community. He is a convicted child abuser who, despite previously being convicted and serving time in prison, has continued to participate in the victimization of children through the offense in this case. As noted in the PSR, Gibson was convicted in 1998 of two counts of Gross Sexual Imposition and sentenced to 3 years, concurrent, on each count. PSR ¶ 53. The facts of that case involved sexual acts with one of Gibson's children. In connection with the instant criminal case, Gibson admitted that he also sexually abused his other child. And while Gibson has claimed that he viewed and traded child pornography out of "curiosity" and not a sexual attraction to children, this contention is belied by his statements to other Gigatribe users regarding his sexual attraction to toddlers, as well as his previous sexual abuse of his own children.

Indeed, Gibson apparently fails even to grasp the seriousness and consequences of his sexual misconduct.  Remarkably, Gibson appears to believe that his children were not adversely affected by the sexual abuse that he inflicted upon them when they were ages 1-6 years old.  This lack of appreciation regarding the consequences of his actions is very troubling, to say the least.  And when offered the opportunity to address his sexual misconduct through treatment, Gibson has not responded.  After his 1998 conviction, Gibson was ordered to attend outpatient sex offender treatment.  Yet, there are no records of his compliance or even attendance, and Gibson has stated that he did not complete the treatment due to "scheduling issues."  *Id.* ¶ 53, 70.  Gibson's previous failure to follow through on treatment, along with his denial that he is sexually attracted to children and his failure to appreciate the consequences of his actions, all raise numerous red flags regarding his risk of recidivism and general mindset.

Finally, the Court should take note of the fact that Gibson received no criminal punishment for the actions against his second child, and his 1998 conviction receives no criminal history points under the guidelines because of its age.  In this regard, Gibson's criminal history category score of I underrepresents his criminal history, a factor that the Court can and should account for in determining its sentence here.

In sum, the United States submits that Gibson's criminal history, failure to follow through on treatment, denial of his sexual attraction to children, and failure to appreciate the damage inflicted upon the children that he has victimized, all show that he is an extreme danger to the community and poses a high risk of recidivism.  His history and characteristics therefore militate in favor of a sentence at the high end of the agreed upon sentencing range.

    C.    <u>Need to Protect Public, Promote Respect for the Law and Afford Adequate Deterrence</u>

A sentence of 235 months will protect the public from Gibson, promote respect for the law, and afford adequate deterrence of criminal conduct.  The United States submits that there is a need to protect the public from Gibson.  Not only did Gibson engage in distributing and possessing child pornography, he has a demonstrated history of sexually abusing children.  In the course of this offense, he has only reiterated his attraction to toddlers and babies, expressing as much during chats with other Gigatribe users.  As discussed above, he maintains a denial that he is sexually attracted to children, and also fails to appreciate the consequences of his actions.  Accordingly, Gibson has demonstrated that he is a danger to this community and poses a high risk of recidivism.  The sentence in this case should be calculated to reflect the need to protect the public from Gibson.

A sentence of 235 months will also promote respect for the law and afford adequate deterrence.  As indicated above, Gibson served prison time for sexually abusing his child.  Even so, he has continued to engage in the illegal conduct giving rise to this case and fails to appreciate the impact that his previous conduct had on his children.  And Gibson did not merely collect child pornography in an attempt to view it for himself—he shared his password with multiple Gigatribe users, ensuring that images of the victims would continue to be spread across the internet and the world.   His actions show a lack of respect for the law, and the Court's sentence in this case should be designed to address that lack of respect.

Finally, there is a need for at least specific deterrence in this case.  This is so because Gibson's conduct and his proclivities toward children, as discussed with respect to his history

8

and characteristics, indicate a risk of recidivism. A sentence of 235 months range will serve to deter Gibson from future illegal conduct.

## CONCLUSION

For the reasons stated above, the United States submits that a sentence of imprisonment of 235 months is just and accounts for the factors set forth in § 3553(a).

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

By: s/ Dominick S. Gerace
DOMINICK S. GERACE (0082823)
Assistant United States Attorney
United States Attorney's Office
200 W. 2nd Street, Suite 600
Dayton, Ohio 45402
Phone: (937) 531-6848
Fax: (937) 225-2564
dominick.s.gerace@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Cheryll Bennett, Esq.
1 South Main Street, Suite 490
Dayton, Ohio 45402
Cheryll_Bennett@fd.org

Counsel for Ronald Scott Gibson.

                                                                                   s/ Dominick S. Gerace
                                                                                   DOMINICK S. GERACE (0082823)
                                                                                   Assistant United States Attorney
                                                                                  United States Attorney's Office
                                                                                  200 W. 2nd Street, Suite 600
                                                                                  Dayton, Ohio 45402
                                                                                  Phone:  (937) 531-6848
                                                                                  Fax:  (937) 225-2564
                                                                                  dominick.s.gerace@usdoj.gov